UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT P. DOHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:11-cv-00838-DML-TWP |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

# Entry on Judicial Review

Plaintiff Robert P. Doherty applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C.§ 423 *et seq.,* on May 29, 2007, alleging that he has been disabled since May 3, 2007. (*See* R. 55). His application was denied on initial review and on reconsideration, and he requested an administrative hearing. Acting for the Commissioner of the Social Security Administration, an administrative law judge ("ALJ"), after a hearing held October 6, 2009, determined that Mr. Doherty is capable of performing light, unskilled, work. (R. 21). Relying on the testimony of a vocational expert, the ALJ found, at step five, that Mr. Doherty's residual functional capacity ("RFC") permits him to work as a security guard, a cashier, or a sales attendant, and those jobs exist in significant numbers in the national economy or in Indiana. Accordingly, the ALJ found that Mr. Doherty is not disabled.

The national Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. Mr. Doherty filed this civil action for judicial review under 42 U.S.C. § 405(g), which governs judicial review of the Commissioner's final decision. The

parties consented to this magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Mr. Doherty asks the court to reverse the ALJ's decision and award benefits, or to remand for further proceedings, on the grounds that the ALJ (a) irrationally failed to consider medical records that pre-dated Mr. Doherty's May 2007 onset date of disability; (b) discredited the opinions of Mr. Doherty's treating physicians on improper grounds; and (c) failed properly to assess Mr. Doherty's credibility.

For the reasons discussed in this entry, the Commissioner's decision is REMANDED for further proceedings.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Mr. Doherty is disabled if his impairments are of such severity that he cannot perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that

"significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis about whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments is a set of medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his RFC is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th

Cir. 2004). If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in his decision, but he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## The ALJ's Findings

Mr. Doherty was born in October 1956, was 50 years old at the time of the alleged onset of disability on May 3, 2007, and was 53 years old at the time of the ALJ's decision on April 26, 2010. Mr. Doherty has a high school education and a lengthy work history. He worked as a rigger in the construction industry from 1992 to 2005, and as a serviceman for a sign company from 2005 through March 2007, jobs that required work activity at the medium and heavy levels of exertion. (R. 144). At step one, the ALJ found that Mr. Doherty had not engaged in substantial gainful activity since his alleged onset date of disability. (R. 19). At step two, he found that Mr. Doherty suffers from three severe impairments: degenerative disc disease of the cervical spine, myalgia, and anxiety. The ALJ found, at step three, that none of Mr. Doherty's impairments met or medically equaled a listing, although his analysis considers only Mr. Doherty's mental impairments, which were analyzed under the B criteria of listing 12.06 for anxiety-related disorders. For purposes of steps four and five, the ALJ determined that Mr. Doherty is capable of performing a modified level of light work (he can sit and stand for 6 hours in an 8-hour work day, can lift, carry, push, and pull up to 10 pounds frequently and 20 pounds occasionally, but should not be required to negotiate ladders, ropes, or scaffolds). This RFC does not permit Mr. Doherty to perform his past relevant work. At step five, and based on the testimony of a vocational expert, the ALJ determined that Mr. Doherty can perform the job

requirements of a security guard, cashier, and sales attendant, and these jobs exist in significant numbers in the relevant economy, rendering him not disabled at any time between May 3, 2007, and the date of the ALJ's decision.

## Mr. Doherty's Appeal

Mr. Doherty's appeal focuses on the ALJ's RFC determination. He contends that the ALJ irrationally ignored medical evidence prior to the alleged disability onset date in May 2007 and, as a result, the ALJ's RFC is not supported by substantial evidence.  He also contends that the ALJ did not evaluate the opinions of his treating physicians in compliance with Social Security regulations and erroneously dismissed them as entitled to no weight solely because the subject of their opinions—Mr. Doherty's residual functional capacity—is a matter that is reserved to the Commissioner for decision.  Finally, he argues that the ALJ's assessment of his credibility was perfunctory and did not address the factors required under Social Security Ruling 96-7p.  The court addresses each argument in turn.

## Analysis

**A.    It was legal error for the ALJ to ignore medical evidence pre-dating Mr. Doherty's alleged onset date of disability.**

Mr. Doherty contends that the ALJ's determination of his RFC is without rational basis because the ALJ ignored, and did not evaluate, any medical evidence that pre-dated his alleged onset of disability in May 2007.  The ALJ's decision reflects his disregard of medical evidence predating Mr. Doherty's disability onset date, as shown by numerous examples:

1. In addressing whether Mr. Doherty suffered from severe impairments of sleep disorder and hyperlipidemia (generally referring to high cholesterol and triglyceride levels), the ALJ stated that the medical evidence cited by Mr. Doherty as support for

6

    these impairments is "from September 2006 and is before the alleged onset date." (R. 19).

2. With respect to Mr. Doherty's cervical spine, the ALJ stated that the only MRI was completed on March 15, 2002,[1] and "the record includes no MRIs or x-rays of the claimant's cervical spine after the alleged onset date of May 3, 2007." (R. 23).

3. The ALJ stated that Mr. Doherty's treatment records by his physician, Edward Negovetich, M.D., contained in Exhibits 3F and 19F "address treatment the claimant received prior to the May 3, 2007 alleged onset date." (R. 23). His decision does not address any of these records.

4. Likewise, with respect to Mr. Doherty's treatment records by his physician, Charles McGovern, M.D., the ALJ stated that "the majority of the treatment records . . . predate the alleged onset of disability date." (R. 23). His decision addresses only Dr. McGovern's treatment records after the disability onset date.

5. As a whole, the ALJ's decision addresses only medical records that are dated after May 2007.

    The Commissioner does not dispute that the ALJ failed to evaluate medical evidence in the record that pre-dated the alleged onset date of disability. He argues, however, that it was appropriate for the ALJ to ignore that evidence "because the regulations [do] not require development or consideration of any records preceding [the disability onset] date." (Commissioner's Brief, Dkt. 21, at p. 3). In support, the Commissioner cites 20 C.F.R. § 404.1512(d)(2), which addresses the Social Security Administration's duty to develop a

---

[1]     In fact, however, the record includes another MRI, dated in April 2006, which the ALJ did not mention. (R. 206).

claimant's "complete medical history" for purposes of deciding disability. The regulation provides that the SSA "will develop your [the claimant's] complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or *unless* you say that your disability began less than 12 months before you filed your application." (Emphasis added.) Subsection (d)(2) explains that if a claimant states that his disability began less than 12 months before he filed his application, then the SSA "will develop your complete history beginning with the month you say your disability began unless we have reason to believe your disability began earlier."

Regardless of the scope of the SSA's duty to *develop* evidence, there is no language in this regulation suggesting that the SSA (or an ALJ) may refuse to *consider* medical evidence in the administrative record that predates disability onset. Further, section 404.1512 addresses, in addition to the SSA's duty to develop a claimant's medical history, the claimant's duty to provide the SSA with all evidence he believes shows he is disabled. Subsections (a) and (b) of 404.1512 provide that the claimant "must furnish medical and other evidence" the SSA can use to determine disability and "evidence" includes "anything [the claimant] or anyone else submits to" the SSA that relates to the disability claim. The claimant's duty to supply evidence is emphasized in other regulations as well. *See* 20 C.F.R. § 404.1514 ("You are responsible for providing" "specific medical evidence to determine whether you are disabled. . . ."); 20 C.F.R. § 404.1515 ("You may give us evidence about your impairment at any of our offices. . . .").

Given also the claimant's responsibility to ensure that the administrative record contains a body of evidence he believes is necessary to determine disability, it is hardly appropriate that an ALJ may ignore medical evidence in the record simply because it predates the claimant's

8

disability onset date. In fact, the regulations require "all" evidence in the record to be considered. The SSA's regulation, at 20 C.F.R. § 404.1520, that explains the five-step process for deciding disability, expressly states that "We will consider all evidence in your case record when we make a determination or decision whether you are disabled." 20 C.F.R. § 404.1520(a)(3).[2]

The Commissioner's alternative argument to support the ALJ's failure to consider the evidence predating Mr. Doherty's onset date is that medical records dated earlier than onset "are especially irrelevant" in this case because Mr. Doherty continued to work a full-time job until March 2007, which would "necessitate" a finding that his impairments were not disabling at that time. It may be true that Mr. Doherty could not be found disabled at any time before March 2007 because he was still working at a level of substantial gainful activity (under step one), but it does not follow that medical evidence predating his alleged disability onset or during any period of substantial work activity is "irrelevant" to evaluating disability at later points in time.

The Seventh Circuit and other circuits have ruled that an ALJ must consider "all" evidence in the administrative record and, in fact, pre-onset evidence may be particularly relevant to assessing a claimant's degenerative condition post-onset. *See Eichstadt v. Astrue,*

---

[2] The Commissioner miscites *Eichstadt v. Astrue,* 534 F.3d 663 (7th Cir. 2008), as a case establishing as "well-settled that an ALJ need not consider evidence pre-dating a claimant's onset or inability to work." (Commissioner's Brief, Dkt. 21, at p. 3). *Eichstadt* provides no support for an ALJ's refusal to consider evidence in the administrative record; in fact, it says the opposite. In *Eichstadt,* the claimant applied for Disability Insurance Benefits 15 years after her date last insured for DIB, and the ALJ found based on the evidence in the record that she was not disabled before that date. The claimant argued that the ALJ erroneously refused to consider evidence that post-dated her date last insured. *Id.* at 667. The court disagreed, stating that the ALJ did not refuse to consider the evidence "but instead she examined it as required." *Id.* The ALJ gave reasons for refusing to assign weight to a medical opinion that the claimant was disabled before December 31, 1987 (her last insured status date), including that the doctor did not even begin to treat the claimant until 1999, a full 12 years after the date last insured. The court stated that the record demonstrated that the ALJ did not, as the claimant argued, "'refuse to consider' [the evidence], but rather concluded that it failed to support Eichstadt's claim." *Id.*

9

534 F.3d 663, 667 (7th Cir. 2008) (ALJ did not refuse to consider evidence based on its date "but instead she examined it as required"); *Johnson v. Sullivan,* 915 F.3d 1575 at *3 (7th Cir. 1990) (unpublished decision) ("Johnson is correct that the ALJ should consider the record as a whole, including pre-onset evidence (particularly relating to a degenerative condition) and post-onset evidence."); *Halvorsen v. Heckler,* 743 F.2d 1221, 1225-26 (7th Cir. 1984) (finding that ALJ's decision was not supported by substantial evidence in part because he gave little, if any, consideration to medical records solely because of their date—records post-dating the claimant's date last insured—without regard to whether the contents of the record shed light on the claimant's disability at earlier points in time). *See also Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) (citing 20 C.F.R. § 404.1520(a)(3)) (finding error in the ALJ's failure to acknowledge medical evidence pre-dating the claimant's onset date because "the regulations require the ALJ to 'consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled'"); *DeBoard v. Commissioner of Social Security,* 211 Fed. Appx. 411, 414 (6th Cir. 2006) (unpublished decision) ("We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability . . . are necessarily irrelevant. . . . We recognize that evidence . . . predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability.").

     The court finds that the ALJ erred in failing to consider medical evidence simply because it pre-dated Mr. Doherty's alleged disability onset date. The ALJ must consider "all" evidence in the administrative record. The court expresses no opinion, of course, on the weight the evidence deserves, within the context of all the record evidence.

### B. <u>Mr. Doherty's physicians' opinions regarding his RFC must be evaluated.</u>

Mr. Doherty also contends that the ALJ erred in discounting his treating physicians' opinions about his residual functional capacity. Both Dr. McGovern (who has treated Mr. Doherty since about 2000) and Dr. Negovetich (who apparently began treating him in 2006) completed a "Physical Residual Functional Capacity Questionnaire" (perhaps supplied by Mr. Doherty's counsel) setting forth their diagnoses and prognoses of Mr. Doherty's medical impairments, his symptoms and treatment, and their views regarding Mr. Doherty's functional limits in a "competitive work situation." (*See* R. 358-363 (Dr. McGovern); R. 515-520 (Dr. Negovetich)).

The ALJ acknowledged that the doctors had supplied these completed questionnaires and stated that "A claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved to the commissioner. Accordingly, medical opinions expressed in this form to indicate that claimant cannot engage in work activity can never be given controlling weight or special significance even if it is given by a treating physician." (R. 24).

Mr. Doherty argues that this language indicates the ALJ completely ignored his doctors' views of his RFC, but the court is not convinced that is so. The decision contains, in other places, the ALJ's review and evaluation of the doctors' treatment and evaluation of Mr. Doherty (although after the disability onset date). The ALJ also explained why he assigned significant weight to the opinions of other doctors, the consultative examiners, in determining Mr. Doherty's RFC. However, the court is not convinced that the ALJ did not reject the treating doctors' views of Mr. Doherty's RFC solely because an RFC is an issue for the Commissioner to decide. (Moreover, the questionnaires provide more than an opinion on RFC; they contain the doctors' diagnoses, prognoses, their observations of Mr. Doherty's symptoms, and summarize their

11

clinical evaluations of Mr. Doherty's impairments.)  It is true, as the ALJ pointed out, that he is not bound to give controlling weight or any special significance to a claimant's physician's opinion on issues reserved to the Commissioner—such as a claimant's RFC.  But the ALJ still must carefully evaluate that kind of opinion in light of all the evidence in the record and determine the extent to which it is supported by the record.  SSR 96-5p (Policy Interpretation Ruling Titles II and XVI:  Medical Source Opinions on Issues Reserved to the Commissioner) ("opinions from any medical source on issues reserved to the Commissioner [including a claimant's RFC] must never be ignored," but must be evaluated in light of all the "evidence in the record to determine the extent to which the opinion is supported by the record").

In this case, as discussed in the previous section, the ALJ refused to consider the entirety of these doctors' treating history of Mr. Doherty because some records predated the onset date of disability.  On remand, the ALJ must evaluate the doctors' opinions of Mr. Doherty's RFC in light of that evidence as well as the remaining evidence in the record.

### C. **The ALJ must revisit his determination of Mr. Doherty's credibility based on all the evidence in the record.**

Mr. Doherty also asserts the ALJ erred in assessing his credibility.  He argues that the ALJ's decision reflects only a perfunctory and boilerplate assessment of his credibility and ignores critical evidence that reasonably should have caused the ALJ to assess his credibility much more favorably.  For example, the ALJ did not discuss Mr. Doherty's lengthy work history, his persistent efforts to seek treatment to relieve his pain and discomfort so that he could work (such as physical therapy, a sequential stimulator, medical massage therapy, chiropractic treatment, acupuncture, aquatic therapy, psychotherapy, and medication), or the limitations on Mr. Doherty's daily living activities from the physical pain and other symptoms he described.  In addition, argues Mr. Doherty, the ALJ's determination of his credibility obviously was not made

12

in light of all the medical evidence because the ALJ determined that evidence predating the onset of disability was not relevant.

The court agrees with Mr. Doherty that the ALJ's decision lacks a sufficient analysis of Mr. Doherty's credibility. The decision contains an oft-repeated boilerplate that the ALJ found that Mr. Doherty's subjective complaints of the intensity, persistence, and limiting effects of his medical impairments "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." As the Seventh Circuit has explained, this boilerplate, unhelpful as it is anyway, also gets things backward because a claimant's credibility is assessed as an *input* to the ALJ's determination of an appropriate RFC. One does not first decide the RFC and then reject as not credible anything inconsistent with it. *Bjornson v. Astrue,* 671 F.3d 640, 645-46 (7th Cir. 2012). An ALJ's use of the boilerplate is not in itself grounds for remand so long as the decision otherwise reflects an appropriate assessment of the claimant's credibility (to the extent the ALJ has rejected as not credible the claimant's subjective complaints). *Filus v. Astrue,* 2012 WL 3990651 at *4 (7th Cir. Sept. 7, 2012). The ALJ must state reasons for the weight he gives to the claimant's statements so that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was assessed. *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination).

Here, the ALJ gave one reason why he found Mr. Doherty's subjective complaints not credible—that "the medical evidence does not support the subjective allegations." (R. 22). Mr. Doherty's descriptions of the limiting effects of his symptoms cannot be measured solely against the objective medical record. *See* SSR 96-7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her

13

ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.")  The ALJ, however, also credited that Mr. Doherty experienced pain and other symptoms limiting his work capacity to light work, rather than the medium level of work that state agency consultants opined was appropriate, suggesting that factors other than the objective medical evidence were considered.  But because the ALJ did not address these other factors, as required by SSR 96-7p, the court is unable to determine whether a logical bridge exists between the evidence and the ALJ's conclusion about Mr. Doherty's credibility.  Moreover, as addressed above, the objective medical evidence includes *all* the evidence in the record and not just that post-dating the alleged onset of disability.  On remand, the ALJ must revisit his determination of Mr. Doherty's credibility in light of all the evidence and the factors discussed in SSR 96-7p.

## Conclusion

The Commissioner's decision is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ORDERED.

Date:  09/27/2012

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Douglas A. Garner
dagarner@zerbegarnerlaw.com